**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| HUA-CHENG PAN, | : | Case No. 2:12-CV-01063 |
| Plaintiff, | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| KOHL'S DEPARTMENT STORES, INC., *et al* | : | Magistrate Judge Mark Abel |
| Defendant. | : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant Kohl's Department Stores, Inc.'s Motion to Dismiss (Doc. 5) Plaintiff's Amended Complaint (Doc. 9) and Plaintiff's Motion for Leave to File Surrepply. (Doc. 15.) For the reasons stated herein, Defendant's Motion to Dismiss is **DENIED in part and GRANTED in part**. Accordingly, Plaintiff's Motion is **MOOT**.

### II. BACKGROUND

#### A. Factual Background

Defendant Kohl's Department Stores, Inc. ("Kohl's") is a domestic corporation that operates retail stores throughout the Southern District of Ohio. (*Amended Complaint*, Doc. 9, ¶ 7.) Plaintiff, Hua-Cheng Pan ("Plaintiff" or "Pan"), is an individual and citizen of Taiwan, who is in the business of designing, producing, marketing, distributing, and selling ornamental sculptures. (*Amended Complaint*, Doc. 9, ¶ 10.) Plaintiff's designs are copyrighted and registered with the United States Copyright Office. *Id.*

On October 14, 2011, Plaintiff registered his Holiday Color Changing Glitterdome Figuries [sic] Sculpture with the United States Copyright Office as Copyright Registration No.

VA1-790-156 (the "Work"). (*Amended Complaint*, Doc. 9, ¶ 14.) The Work is a plastic Santa Claus figurine that functions as a holiday glitter globe. (*Amended Complaint*, Doc. 9-1, Exhibit B). The torso of the Santa Claus serves as the globe that houses the swirling glitter. *Id.* The Santa figurine bears a round face with a moustache and beaded eyes, along with a striped scarf and gloves, and the figurine is mounted on a base. *Id.*

### B. Procedural Background

On November 19, 2012, Pan filed a Complaint against Kohl's and unnamed Defendants in this Court, alleging seven causes of action: (1) Count I for copyright infringement, contributory copyright infringement, and vicarious copyright infringement pursuant to 17 U.S.C. § 514.; (2) Count II for unfair competition by false designation of origin and trade dress infringement pursuant to the Lanham Act, Section 43(a), 15 U.S.C. § 1125(a); (3) Count III for state unfair competition and deceptive trade practices pursuant to O.R.C. § 4165; (4) Count IV for common law unfair competition; (5) Count V for civil conspiracy; (6) Count VI for imposition of a constructive trust upon illegal profits; and (7) Count VII for an accounting pursuant to 17 U.S.C. § 504. (Doc. 2.)

On February 15, 2013, Plaintiff filed an Amended Complaint in this Court adding Defendant Leader Light to the case. (Doc. 9.) Leader Light is a foreign corporation with its principal place of business in Hong Kong. The Amended Complaint also described in more detail the elements of Plaintiff's Santa figurine upon which the Defendants allegedly infringed upon. *Id.*

Plaintiff asserts that Kohl's purchased knock-off copies of Plaintiff's copyrighted design of the Work from Defendant Leader Light and/or other unnamed defendants and sold these Works to the public for profit. (*Amended Complaint*, Doc. 9, ¶ 13.) Plaintiff alleges that

2

Defendant Leader Light manufactured, marketed, distributed and/or sold knock-off copies of the Work to Defendant Kohl's and others. *Id.* at ¶ 17. Plaintiff claims that Defendants' knock-offs are virtually identical to Plaintiff's Work and therefore violate his Copyright. *Id.* at ¶ 25. Plaintiff contends that the knock-off works have a virtually identical shape, height and circumference as the Work's base, torso and head. *Id.* Additionally, both works allegedly share nearly identical facial features, skin tones, and mustaches, and both bear fur trimmed hats and overlapped scarves. The Kohl's Santa and Plaintiff's Santa also lack beards and boots, and allegedly share the same position, angles, size, and appearance of their hats, scarves, eyes, noses, arms and mittened hands. *Id.* at ¶ 17; *compare* Exhibit B *with* Exhibit C.

Kohl's moves to dismiss Pan's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 5.) Kohl's argues that Plaintiff's claims fail as a matter of law and therefore the Complaint should be dismissed in its entirety. (*Motion to Dismiss*, Doc. 5, at 3.) Kohl's alleges that Plaintiff's work contains no protectible expression under the law, that Plaintiff's Santa is markedly different than the Kohl's Santa, and that Plaintiff's copyright is invalid because he made material misstatements and omissions to the Copyright Office. *Id.* Kohl's argues that Plaintiff's other claims are either derivative of the copyright claim or are pre-empted. *Id.*

Plaintiff opposes the Motion to Dismiss, and on April 5, 2013 filed a Motion for Leave to File Surreply to Reply Memorandum Filed by Defendant. (Doc. 15.) The motions have been fully briefed and this matter is ripe for review.

### III. STANDARD OF REVIEW

A case may be dismissed if the complaint does not state a claim on which relief can be granted. Fed.R.Civ.P. 12(b)(6). A motion to dismiss for failure to state a claim "is a test of the

3

plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *Murphy v. Sofamor Danek Gp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 127 S.Ct. 1955 (2007)).

Although liberal, the Rule 12(b)(6) standard requires more than the bare assertion of legal conclusions to survive a motion to dismiss. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). The complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007)). While a complaint need not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007). A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556).

In addition to the complaint, a court, "must consider ... other sources ..., in particular, documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322–23, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). "In considering a motion to dismiss for failure to state a claim under [Rule 12(b)(6) ], a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated into

4

the complaint by reference." *AAA Installers v. Sears Holdings Corp.*, 764 F. Supp. 2d 931, 937-38 (S.D. Ohio 2011).

## IV. LAW AND ANALYSIS

### A. Copyright Infringement

Plaintiff asserts a copyright infringement claim against Kohl's, Leader Light, and unnamed defendants. Specifically, Plaintiff contends that Kohl's copied and sold knock-offs of the Work in violation of his Copyright. (*Amended Complaint*, Doc. 9, ¶ 15.) Plaintiff alleges that these knock-offs are nearly identical copies of his Work. *Id.*

Reduced to its most basic elements, a copyright infringement action requires a plaintiff to prove that: (1) he owned a valid copyright; and (2) the defendant copied it. *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 274 (6th Cir. 2009); *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003). Copyright "registration made before or within five years after the first publication of the work shall constitute prima facie evidence of the validity of the copyright … ." 17 U.S.C. § 410(c); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004) (noting that registration constitutes prima facie evidence that the plaintiff owned a valid copyright).

Here, Defendant alleges that Plaintiff's registration is invalid and cannot be the basis for a copyright infringement claim. (*Motion to Dismiss*, Doc. 5, at 10.) The Copyright Office requires that an applicant disclose whether the work sought to be registered is a "derivative work" by identifying "any preexisting work or works that th[e] work is based on or incorporates." (*Amended Complaint*, Doc. 9-1, Exhibit A, at Item 6.) Defendant argues that because Plaintiff failed to disclose preexisting, public domain works on the copyright application, his claim should be dismissed. (*Motion to Dismiss*, Doc. 5, at 11.) Defendant alleges

5

that Plaintiff's figurine is a new version of a work that is in the public domain; therefore identification of those works should have been included on his application. (*Motion to Dismiss*, Doc. 5, at 10-14.) This Court, however, is unable to conclude that Pan in fact based his Work on particular items in the public domain that are subject to disclosure. No evidence supporting such a theory has been presented to the Court. This Court will rely on Plaintiff's assertion in his Amended Complaint that he is the sole owner of all rights and interests in the copyright of the Work, and that his copyright registration is valid. (*Amended Complaint*, Doc. 9, ¶ ¶ 14 & 16). Thus, Plaintiff has sufficiently pleaded this element of his infringement claim.

As to the second element, Plaintiff must prove that Kohl's copied his protected expression. Where a plaintiff is unable to offer direct evidence that the defendant copied his work, the plaintiff may prove the second element inferentially with evidence that the defendant had access to the plaintiff's work and that there is a substantial similarity between it and the defendant's work. *Bridgeport*, 585 F.3d, at 274; *Ellis v. Diffie*, 177F.3d 503, 506 (6th Cir. 1999). Even if access cannot be proven, a plaintiff may be able to prevail if he shows a high degree of similarity between the two works. *Ellis*, 177 F.3d, at 507. Access is not disputed by either party, therefore only substantial similarity is at issue.

The Sixth Circuit has condensed the substantial-similarity inquiry into a two part test. *Kohus v. Mariol*, 328 F.3d 848, 855 (6th Cir. 2003). First, a court must filter out the unoriginal and unprotectible elements and "identify the aspects . . . protectible by copyright," while taking note that the expression of an idea is protectible. *Id.* (citing *Mazar v. Stein*, 347 U.S. 201, 217, 74 S.Ct. 460, 98 L.Ed. 630 (1954) ("Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea-not the idea itself.")). Second, the Court must determine "'whether the allegedly infringing work is 'substantially

6

similar' to protectible elements of the artist's work.'" *Id.* (citing *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1296 (D.C.Cir. 2002)). In cases where, such as here, the general public purchases the item at issue, then the determination of whether two works are substantially similar is "based on the judgment of the ordinary reasonable person" *Id.*[1]

The first prong of the substantial similarity analysis requires the Court to filter out the unoriginal and unprotectible elements of the two works so it can determine whether there are any aspects of the Santas protectible by copyright. Both parties concede that there is "no dispute that the stereotypical elements of a Santa Claus are unprotectible." *Kurt S. Adler, Inc. v. World Bazaars, Inc.*, 897 F. Supp. 92, 95 (S.D. N.Y. 1995). The features that constitute these general elements typically include a jolly, elderly man with a rotund stomach, a white beard, and a red hat. *See id.* at 95 ("[S]tereotypical elements . . . are a jolly, rotund, elder gentleman, wearing a red suit and floppy cap with white trim, and a black belt and boots."). The functional element of the parties' works—the glitter globe itself—is also unprotectible. *See id.* at 94 ("The Court further finds unprotectible the functional elements that enable these Santas to blow bubbles."). Defendant's argument, however, that "there is nothing about Plaintiff's Santa that is actually copyrightable," is misplaced.

Kohl's alleges that "[t]here is only one Santa Claus" that "lives at the North Pole," but nonetheless acknowledges through its recitation of case law that there are a myriad of ways to portray the idea of Santa Claus. (*Motion to Dismiss*, Doc. 5, at 4.) *See Kurt S. Adler*, 897 F.

---

[1] The Sixth Circuit modified the ordinary observer test in circumstances where the target audience possesses specialized expertise, but only when that expertise is relevant to the purchasing decision. *Kohus v. Mariol*, 328 F.3d 848, 856-57 (6th Cir. 2003). The *Kohus* Court explained that the "larger principle . . . is that the inquiry in the second prong of the substantial similarity test should focus on the intended audience. This will ordinarily be the lay public, in which case the finder of fact's judgment should be the perspective of the lay observer or . . . the ordinary reasonable person." *Id.* at 857. Because a specialist's perception of similarity would not be much different from the lay observer's perception with regard to the similarity of the Santa glitterglobes, the ordinary observer test is appropriate here.

Supp. at 94 ("These stereotypical features of a Santa notwithstanding, the Court finds that, from an artistic standpoint, there is, indeed, a virtually infinite variety of ways to express the idea of Santa."). The expressive choices made in connection with the overall shape, size, and artistic features of the two Santas are protectible. Given that there are protectible elements in the parties' works, the Court must engage next in the second prong of the inquiry to determine whether the Defendants' Santa is substantially similar to Plaintiff's Santa from the viewpoint of an ordinary reasonable person. *Kohus*, 328 F.3d at 855.

This Court finds that there is a substantial similarity between the artistic, protectible elements of the two works. As alleged in Plaintiff's Amended Complaint, both of the figurines' bases, torsos, and heads, have a virtually identical shape, height and circumference. The two Santas also share nearly identical facial features, skin tones, mustaches, fur trimmed hats, and overlapped scarves, as well as the positions, sizes, and appearance of their hats, scarves, eyes, noses, arms and mittened hands. *Compare* Exhibit B (Plaintiff's Work) *with* Exhibit C (Defendant's Work). The Court takes note of the minor differences in protectible elements that Defendant enumerates. For example: the two Santas are slightly different sizes; the Santas have different color bases and globes; the Santas are illuminated by different colors; Plaintiff's Santa has a striped scarf while the Kohl's Santa has a polka-dot scarf; the Santas' mittens are different colors; and the rosiness of the Santas' cheeks and the coloration of their faces are not exactly the same. (*Motion to Dismiss*, Doc. 5, at 9-10.)

Kohl's relies on these differences to support its contention that the works are not substantially similar. *Id.* The Court finds, however, that "an ordinary lay observer would overlook the dissimilarities between the artistic (protectible) aspects of the two works and would conclude that one was copied from the other." *Kurt S. Adler*, 897 F.Supp. at 95-96 ("[T]hese

8

dissimilarities are all but irrelevant to the overall appearance of the Santas as displayed … as they would appear to a consumer in their principal intended use."). Defendant concedes that the Kohl's Santa "bears an uncanny resemblance" in overall appearance to Pan's Santa. *Id*. at 94 (citing *Fisher-Price Inc. v. Well-Made Toy Manufacturing Corp.*, 25 F.3d 119, 123 (2d Cir. 1994)). The likeness—though not identical—cannot be ignored by this Court.

The Court is mindful that a motion to dismiss does not involve consideration of whether "a plaintiff will ultimately prevail" on the merits, but instead "whether the claimant is entitled to offer evidence" in support of his claims. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995). Upon review of Plaintiff's Amended Complaint, this Court cannot conclude that the Plaintiff's Complaint, with the Exhibits incorporated therein, does not "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950. The Court cannot say that Plaintiff's Work contains no original expression. While the idea behind a Santa glitterglobe is not protectible, this Court finds that Plaintiff has made a valid claim of copyright infringement based on the substantial similarity of the protectible elements of the two works.

The Court accordingly **DENIES** Kohl's' motion with respect to Plaintiff's copyright claim in Count I.

### B. Lanham Act

Plaintiff brings two claims under the Lanham Act. The first claim is for false designation of origin, false or misleading description, or false or misleading representation, and the second claim is for trade dress infringement in violation of the Lanham Act, Section 43(a), 15 U.S.C. § 1125(a).[2]

---

[2] Section 1125(a) of the Lanham Act provides: (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

9

The Sixth Circuit looks to the likelihood of confusion when deciding whether there is a valid claim for false designation of origin. *Nationwide Mut. Ins. Co. v. McRae*, No. 2:10-CV-0921, 2011 WL 2214163, *2 (S.D. Ohio June 7, 2011) (citing *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006)). In its Amended Complaint, Pan alleges that the Defendants have falsely designated the origin of the designs for the knock-off work. (*Amended Complaint*, Doc. 9, ¶ 35-46.) Pan claims that this creates a likelihood of confusion as to the origin of Defendants' work. *Id.* Pan alleges that because the Defendants have failed to identify Plaintiff as the true origin of the Work's design, the public is being presented with a false or misleading description of the knock-offs. *Id.* Accepting all facts alleged as true, this Court finds that Plaintiff has stated a valid claim for false designation of origin and false or misleading representation in violation of the Lanham Act.

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) protects the unregistered "trade dress" of a product from infringement. *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002). To recover for trade dress infringement under § 43(a), a party must prove by a preponderance of the evidence: 1) that the trade dress in question is distinctive in the marketplace, thereby indicating the source of the good it dresses; 2) that the trade dress is primarily nonfunctional; and 3) that the trade dress of the competing good is confusingly similar. *Id.* (citing *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000)).

---

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

This Court is mindful of the fact that it need not consider the likelihood of success on the merits of Plaintiff's trade dress infringement claim. The Court only needs to consider whether a claim has been made upon which relief can be granted. The question to be answered in trade dress infringement claims is what types of things can be categorized as trade dress. *Id.* This Court must determine whether Plaintiff's Work as described in its Amended Complaint is protectible by trade dress at all.

Kohl's argues that Plaintiff's Lanham Act claim fails for the same reasons as his copyright claims. (*Motion to Dismiss*, Doc. 5, at 15.) Specifically, Kohl's alleges: (1) that Pan cannot claim Santa Claus as trade dress; (2) that Pan has failed to plead that his product configuration has developed secondary meaning in the minds of consumers; and (3) that the Kohl's Santa is not substantially similar to Plaintiff's Santa. *Id.* This Court already found, in Section IV.A. *supra*, that an ordinary person could find the Kohl's Santa to be substantially similar to Plaintiff's Santa. As such, this claim will not be addressed again here.

When determining whether a work is entitled to either trade dress protection or copyright protection, a similar inquiry is made by the reviewing court. "[J]ust as copyright law does not protect ideas but only their concrete expression, neither does trade dress protect an idea, a concept, or a generalized type of appearance." *Kurt S. Adler*, 897 F.Supp. at 97. Plaintiff can claim trade dress protection only if the combination of elements he seeks to protect is shown to be distinctive in the marketplace and that the trade dress of Kohl's Santa is "confusingly similar." *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002). This Court finds that the combination of elements that Plaintiff used in his Work could be deemed distinctive because the elements are largely arbitrary and fanciful. "[A]rbitrary or fanciful trade dresses are considered to be inherently distinctive, and therefore always satisfy

the first prong of the test for trade dress protection." *Kurt S. Adler*, 897 F.Supp. at 96 (citing *Jeffrey Milstein, Inc. v. Greer, Lawlor, Roth, Inc*., 58 F.3d 27-32 (2d Cir. 1995)). The artistic design of the Plaintiff's Santa is therefore protectible by trade dress.

Kohl's is correct to point out that the functional elements of the Work cannot be protected by trade dress, just as they cannot be protected by copyright. Plaintiff's Work has some functional features, namely the stereotypical Santa elements and the glitter globe itself. The overall impression created by the figurine, however, comes not only from these elements but also from the ornamental features such as the size and shape of the figure and the appearance of its accessories. "Trade dress refers to the image and overall appearance of a product. It embodies that arrangement of identifying characteristics or decorations connected with a product … that makes the source of the product distinguishable from another and … promote its sale." *Abercrombie & Fitch Stores*, 280 F.3d at 629. The Kohl's Santa and the Plaintiff's Santa create very similar overall impressions that could make them difficult to distinguish from one another in the marketplace. As such, the Court must turn to whether the Plaintiff's Santa has acquired a secondary meaning that would entitle it to trade dress protection.

To demonstrate secondary meaning under the Lanham Act, "the evidence must show that 'in the minds of the public, the primary significance of the trade dress is to identify the source of the product rather than the product itself.'" *General Motors Corp. v. Lanard Toys, Inc*., 468 F.3d 405, 418 (6th Cir. 2006) (citing *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851, 102 S.Ct. 2182 (1982)). The Sixth Circuit applies a seven-factor test to determine whether secondary meaning exists in a trade dress: (1) direct consumer testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4) amount and manner of advertising; (5)

amount of sales and number of customers; (6) established place in the market; and (7) proof of intentional copying. *General Motors Corp.,* 468 F.3d at 418.

Secondary meaning is an element of trade dress which must be shown by the plaintiff; therefore, the burden of presenting evidence of secondary meaning falls on Pan. *General Motors*, 468 F.3d at 418 (citing *Wal-Mart Stores*, 529 U.S. at 210, 120 S.Ct. 1339). The evidence necessary to conduct the aforementioned seven-factor test is not available at the motion to dismiss stage of litigation. This Court is unable to conclude at this time that no reasonable trier of fact could find that Pan has or has not established secondary meaning in the trade dress of its Work. Based on the foregoing, the Court also cannot find that Plaintiff has failed to state a claim for false designation of origin and false or misleading representation in violation of the Lanham Act.

Accordingly, the Court **DENIES** Kohl's motion to dismiss with respect to Plaintiff's claims under the Lanham Act in Count II.

### C. State Law Deceptive Trade Practices, Unfair Competition and Conspiracy Claims

In addition to his Copyright Act and Lanham Act claims, Plaintiff asserts the following state-law claims: unfair deceptive trade practices under Ohio Revised Code § 4165 (Count III), unfair competition under Ohio common law (Count IV), and civil conspiracy (Count V). Defendant argues that the Copyright Act preempts these claims and therefore they should be dismissed.

Section 301 of the Copyright Act provides that:

On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as defined by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no

>person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a) (1994). Therefore, "a state common law or statutory claim is preempted if: (1) the work is within the scope of the 'subject matter of copyright,' as specified in 17 U.S.C. §§ 102, 103; and, (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106."[3] *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001).

### *1. Deceptive Trade Practices Act and Common Law Unfair Competition Claims*

This Court must determine whether Plaintiff's claims of unfair competition under both the Deceptive Trade Practices Act ("DTPA") of O.R.C. § 4165 and Ohio Common Law are within the subject matter provisions of the Copyright Act. Plaintiff does not argue that his state law claims under the DTPA and common law are based on different acts or conduct of Defendants than that which is within the subject matter of copyright. Rather Plaintiff states that his claims are based on "[t]he acts, practices, and conduct of Defendants as alleged herein" and the "acts, and conduct of Defendants, as alleged above." (*Amended Complaint*, Doc. 9, ¶ ¶ 48 & 55.) Based on the foregoing, this Court finds that the Work is within the scope of the subject

---

[3] Section 106 provides: Exclusive rights in copyrighted works Subject to sections 107 through 121, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
(1) to reproduce the copyrighted work in copies or phonorecords;
(2) to prepare derivative works based upon the copyrighted work;
(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

matter of the copyright. The real issue is therefore whether Plaintiff's unfair competition claims are the equivalent to those under the Copyright Act.

Equivalency exists if the state law right may be abridged by an act which in and of itself would infringe one of the exclusive rights protected by the Copyright Act. *Entity Prods. v. Vargo*, 1:07-CV-1197, 2007 WL 3129861, *4 (N.D. Ohio Oct. 23, 2007). The tort of unfair competition in Ohio is grounded in "preventing fraud on the public" by preventing deceptive trade practices. *Drake Medicine Co. v. Glessner*, 68 Ohio St. 337, 67 N.E. 722, 727 (1903). Unfair competition may include "unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another." *Water Mgmt., Inc. v. Stayanchi*, 15 Ohio St.3d 83, 472 N.E.2d 715, 717 (1984).

Plaintiff does not allege that Kohl's, Leader Light, or the unnamed defendants engaged in any practices constituting unfair competition other than making and selling knock-offs of the copyrighted Work. This Court finds that Pan's unfair competition claims fail to alter qualitatively the nature of the litigation sufficiently to distinguish them from his copyright infringement claim. The underlying action—Defendants' alleged infringement upon Plaintiff's Work—is the same for all three claims. As such, Counts III and IV are preempted by the Copyright Act. *See, e.g.*, *ATC Distrib. Group, Inc. v. Whatever It Takes Transmissions & Parts,* 402 F.3d 700, 714 (6th Cir. 2005) (finding preemption on an unfair competition claim where the only basis of the claim was misappropriation of the copyrighted part numbers, images, etc.); *Stromback v. New Line Cinema,* 384 F.3d 283, 303 (6th Cir. 2004) (claim "based upon the time, effort, and money that he expended in developing the screenplay [does not assert] an extra element that saves his claim from preemption").

*2. Civil Conspiracy Claim*

Defendant Kohl's moves to dismiss the civil conspiracy claim in Count V on the ground that it is also preempted by the Copyright Act. Kohl's argues that the state conspiracy claim is based on the same alleged conduct giving rise to the copyright infringement claim.

In Ohio, an unlawful conspiracy is a "malicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.,* 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995). Thus, to establish a claim of civil conspiracy, plaintiff must allege: (1) a malicious combination; (2) of two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy. *Id.* "The malice involved in the tort is 'that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.'" *Williams v. Aetna Fin. Co.,* 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998) (quoting *Pickle v. Swinehart*, 170 Ohio St. 441, 443, 166 N.E.2d 227 (1960)). An underlying unlawful act or tort is required before a party can prevail on a civil conspiracy claim. *Dickerson Internationale, Inc. v. Klockner,* 139 Ohio App.3d 371, 380, 743 N.E.2d 984 (2000). As discussed above, the unlawful act or tort constituting civil conspiracy must assert rights different from those protected under § 106 of the Copyright Act in order to avoid preemption.

This Court concludes that the allegations in Count V of the Amended Complaint are insufficient to state an independent claim of civil conspiracy upon which relief may be granted. Conclusory allegations of a "conspiracy" are in and of themselves "insufficient to state a claim where there are no facts alleged in support of the conclusions." *Aqua Bay Concepts, Inc. v. Gross Point Bd. of Realtors*, 91-CV-74819, 1992 WL 350275, *5 (E.D. Mich. May 7, 1992) (citing

16

*Blackburn v. Fish University*, 443 F.2d 121 (6th Cir. 1971)). Plaintiff's assertion that Defendants "did in fact conspire to infringe upon Plaintiff's copyrighted work" is conclusory and insufficient to support the elements of the distinct state law claim of civil conspiracy. (*Amended Complaint*, Doc. 9, ¶ 62.) Plaintiff does not argue in its supporting brief that the alleged conspiracy was to do anything other than commit conduct that is proscribed by the Copyright Act. *Cf. Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*, 476 F. Supp. 2d 809, 825 (S.D. Ohio 2007) (refusing to dismiss conspiracy claim because allegations in complaint asserted the independent unlawful act of fraud which is not an element of copyright infringement). Furthermore, the civil conspiracy claim must be preempted because the relief sought by Plaintiff is essentially the same as the underlying federal copyright claim for the purposes of § 301 of the Copyright Act. (*Amended Complaint*, Doc. 9, ¶ 58.)

The Copyright Act was designed to incorporate related claims such as those for unfair competition and civil conspiracy. Accordingly, Plaintiff's claims for unfair deceptive trade practices under Ohio Revised Code § 4165, unfair competition under Ohio common law, and civil conspiracy are preempted by the Copyright Act. The Court therefore **GRANTS** Kohl's motion to dismiss with regard to the Counts III, IV, and V.

## V. CONCLUSION

For the foregoing reasons, Defendant Kohl's Motion to Dismiss is **DENIED** with regard to Counts I, II, VI and VII of Plaintiff's Amended Complaint and **GRANTED** with regard to Counts III, IV, and V. Accordingly, Plaintiff's Motion for Leave to File Surreply to Reply

Memorandum Filed by Defendant is **MOOT.**  Counts III, IV and V are hereby **DISMISSED** as to Defendant Kohl's.

    **IT IS SO ORDERED.**

                                  <u>**s/Algenon L. Marbley**</u>
                                  **ALGENON L. MARBLEY**
                                  **UNITED STATES DISTRICT JUDGE**

**DATE: September 12, 2013**