IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HUA-CHENG PAN, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:12-CV-1063 |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| KOHL'S DEPARTMENT STORES, INC., | : | Magistrate Judge Kemp |
| *et al.*, | : | |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

Before the Court are Plaintiff's and Defendants' July 31, 2015 Motions for Summary Judgment (Docs. 58, 59, and 62) This Court held hearings on said motions on March 25, 2016. Based on the pleadings and the arguments of counsel at the hearing, the Court **DENIES** Plaintiff's motions and **GRANTS** Defendants' motion.

**I. BACKGROUND**

**A. Factual Background**

This is a copyright case concerning alleged infringement of a Santa Clause figurine. This case shares many of the same facts with another case before the Court, *Yang v. Kohl's*, No. 2:13-cv-676 ("*Yang*"), and the Court will cite shared facts from each case interchangeably. Plaintiff Hua-Chang Pan ("Pan") alleges that Defendants Kohl's Department Stores, Incorporated ("Kohl's"), Leader Light, Limited ("Leader Light"), and unnamed Defendants (collectively with Kohl's and Leader Light, "Defendants") have infringed on Plaintiff's intellectual property rights by selling and distributing Plaintiff's copyrighted property for profit without Plaintiff's consent.

Plaintiff is a citizen of Taiwan engaged in designing, marketing, distributing, and selling ornamental sculptures. (Doc. 58 at 1.) Kohl's is a retail department store headquartered in Milwaukee, Wisconsin. (*Yang* Defs.' Mot. for Summ. Judg., Doc. 50 at 1.) In late 2006, Plaintiff sketched a black-and-white, basic drawing of the outer appearance of a Santa Claus snow globe figurine. (Doc. 62 at 4; Defs.' Reply to Pl.'s Resp. in Opp. to Pl.'s Mot. for Summ. Judg., Doc. 76 at 3) (citing Pan Depo., Vol. I at 30:12-20; 26:13-15; 30:23-25.) This was among many sketches of several holiday items that Plaintiff had drawn. (Doc. 62 at 4.) Plaintiff presented the sketches to one Mr. Chu, a China-based factory owner. (*Id.*) Mr. Chu chose which of Plaintiff's black-and-white sketches he liked best and went on to manufacture a snow globe figurine (the "Work"). (*Id.*)

On October 14, 2011, Plaintiff registered "2011-2800747 Holiday Color Changing Glitterdome Figuries [sic] Sculpture" with the United States Copyright Office, Registration Number VA1-790-156. (Doc. 58 at 2.) Plaintiff then purported to grant the Huizhou Zhaoxing Technology Factory ("Zhaoxing"), a corporation of the People's Republic of China, an exclusive license to the Work. (*Id.*) Zhiaoxing thereafter made payments to Plaintiff for the license. (*Id.*)

Kohl's is a retail department store headquartered in Milwaukee, Wisconsin. (*Yang* Defs.' Mot. for Summ. Judg., Doc. 50 at 1.) Kohl's sources many items it sells from foreign vendors, including China-based trading company and codefendant Leader Light. (*Id.*) Leader Light gets items from China-based manufacturers for sale to retailers like Kohl's. (*Id.* at 2.) Every October, Kohl's representatives visit Leader Light to find items to sell in the upcoming Christmas season. (*Id.*) Leader Light assembles its assortment for sale each year after conducting market research to anticipate upcoming trends, such as color schemes. (*Id.*) Its investigation includes researching products that have sold well in recent years by Kohl's and other retailers, visiting European

2

websites, and frequenting local factories to divine the trends. (*Id.*) Kohl's also sometimes informs Leader Light of what trends or colors are interesting for that year. (*Id.*) When Kohl's representatives arrive, Leader Light presents nearly 1,600 Christmas ornaments on its showroom floor, from the window to the wall, as it were, for the representatives select items they are interested in buying. (*Id.* at 2-3.) Kohl's representatives then compare the items it scouted from the Chinese factories, and narrow the selection to approximately 2,200 to send to the United States for further consideration. (*Id.*) This winnowing results in Kohl's selling 30 to 40 items from Leader Light each year. (*Id.*)

In 2008, Kohl's purchased approximately 12,800 units of the Work from Zhaoxing for sales in its stores. (Doc. 58 at 2; Doc. 62 at 4) In 2009, Kohl's purchased 17,010 units of the Work from Zhiaoxing. (Doc. 58 at 2.) In November of 2011, Zhiaoxing presented Plaintiff an unauthorized and virtually identical version of the Work (the "Knockoff"), which Kohl's allegedly purchased from Leader Light. (*Id.* at 3.) After discovering the Knockoff, Zhiaoxing stopped making licensing payments to Plaintiff.

### B. Procedural History

Plaintiff filed his complaint with the Court on November 19, 2012. (Doc. 2.) The original Complaint alleged copyright infringement, unfair competition and other violations of the Lanham Act and Ohio law, civil conspiracy, accounting violations, and the imposition of a constructive trust. (*Id.*) The Court's September 12, 2013 Order granting in part and denying in part Defendant Kohl's Rule 12(b)(6) motion dismissed Plaintiff's Ohio law and civil conspiracy claims. (Doc. 18.) Plaintiff has abandoned his accounting and constructive trust claims. (Pl.'s Resp. in Opp. to Defs.' Mot. for Summ. Judg., Doc. 73 at 15.) Plaintiff has also abandoned his Lanham Act claims entirely. (Tr. of Summ. J. Hr'g at 18-19.)

The remaining claims are for copyright infringement and attorneys' fees. (Doc. 73 at 12.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). The court reviewing a summary judgment motion need not search the record in an effort to establish the lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the nonmoving party to present affirmative evidence to defeat a properly supported motion, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989) (citation omitted), and to designate specific facts that are in dispute. *Anderson*, 477 U.S. at 250 (citation omitted); *Guarino*, 980 F.2d at 405.

To survive the motion, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere existence of a

4

scintilla of evidence in support of the opposing party's position is insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251 (citation omitted); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992) (finding that the suggestion of a mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

### III. ANALYSIS

#### A. Copyright

*1. Standard*

To succeed with his copyright claim, Plaintiff must prove that he owns the copyright to the Snow Globe, and that Defendant copied it. *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003) (citation omitted). But not all copying is illicit. Plaintiff must "prove 'copying of constituent elements of the work *that are original*.'" *Id.* (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("Originality remains the *sine qua non* of copyright, accordingly, copyright protection may extend only to those components of a work that are original to the author.")). So before comparing similarities between the works, the Court "should first identify and eliminate those elements that are unoriginal and therefore unprotected." *Id.* After identifying and eliminating those elements, the inquiry turns to "whether the allegedly infringing work is 'substantially similar' to protectable elements of the author's work." *Id.* (citing *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1296 (6th Cir. 2002)).

A certificate of copyright creates the presumption of the copyright's validity. *Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995) (citing 17

U.S.C.A. § 410(c) (1977)). This presumption can be rebutted by the party challenging the copyright. *Id.* (citation omitted).

*2. Analysis*

The threshold issue of authorship is the first, and entirely dispositive, inquiry. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 346 (1991) (authorship is "the very 'premise of copyright law.'") (quoting *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1368 (CA5 1981)). Defendants paint Plaintiff as a link in the chain leading to the finished Work, but not exerting enough of an influence on the final product to be considered the Work's author. Plaintiff contends that he is the one "who translated an idea into a fixed tangible expression" and thus deserves authorship credit. (Pl.'s Reply to Defs.' Resp. in Opp. to Pl.'s Mot. for Summ. Judg., Doc. 75 at 5.)

Defendants' argument rests on their contention that all Plaintiff contributed to the project was his black-and-white sketches, which have since vanished. Plaintiff testified that he drew a "basic drawing" of the "outer appearance" of the figurine. (Doc. 76 at 3) (citing Pan Depo., Vol. I at 30:12-20; 26:13-15; 3-:23-25.) From Plaintiff's black-and-white sketch Chu fashioned this:

6



(Doc. 76 at 4.) Defendants argue that Chu's contributions in creating the snow globe render Chu the author of the Work, not Plaintiff. Chu selected the color scheme and dimensions of the Work, and it was Chu who manufactured the Work. Thus, argue Defendants, the Work is derivative, originating from Plaintiff's sketch yet a new creation authored by Chu. 17 U.S.C. § 101 describes a "derivative work" as "[a] work consisting of . . . modifications which, as a whole, represent an original work of authorship." The test for determining authorship of a derivative work sets a low bar. Indeed "all that is needed . . . is that the author contributed something more than a merely trivial variation, something recognizably his own." *Sargent v. American Greetings Corp.*, 588 F. Supp. 912, 917 (N.D. Ohio 1984). In other words, "[o]riginality requires only a 'minimal degree of creativity.'" *Cannon Grp., Inc. v. Better Bags, Inc.*, 250 F. Supp. 2d 893, 898 (S.D. Ohio 2003) (quoting *Feist*, 499 U.S. at 345). Once that low bar is cleared, copyright for the derivative work "is independent from the copyright for preexisting work." *Id.* at 899. This is because authorship is credited to "the party who actually creates the work, that is, the person who

translates an idea into a fixed, tangible expression." *Banc Training Video Syst. v. First American Corp.*, No. 91-5340, 1992 U.S. App. LEXIS 3677, at *9 (6th Cir. March 3, 1992) (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 742 (1989)). More to the point, "[p]roviding sketches . . . over copyrightable material is not sufficient to make one a joint author." *Id.* (citing *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1493 (11th Cir. 1990)). And creating "[a] sculpture based on a drawing" is a textbook example of authoring a derivative work. *See* United States Copyright Office, "Copyright in Derivative Works and Compilations," Circular 14 at 1, Reviewed Oct. 2013.

Plaintiff admits that he is responsible only for black-and-white sketches, but Plaintiff offers a few explanations for why Plaintiff nonetheless has the right to sue Defendants for copyright violations. None is persuasive. First, Plaintiff contends that Defendants misrepresent Plaintiff's deposition testimony. (Doc. 75 at 1.) Plaintiff's attempt to correct the record is futile. Plaintiff merely reiterates that Plaintiff was solely responsible for the sketch, which was never controversial. It is uncontested that Plaintiff drew the sketch. At issue is whether Plaintiff had a valid copyright to the sculpture.

Second, Plaintiff provides the testimony of Chu himself, through a newly-found affidavit. (Doc. 73 at 5.) Defendants contend that the Chu affidavit is improper. (Doc. 76 at 6.) Indeed, Chu's affidavit is not sworn, and it alleges actions regarding other persons with no foundation as to Chu's personal knowledge of them. (*Id.*) And the affidavit does not establish that Chu is competent to testify at trial. (*Id.*) Further, Chu's affidavit is written entirely in English and does not mention a translator. (*Id.*) This is odd considering Pan testified that he does not know whether Chu speaks or reads English. (*Id.*) However improper the affidavit might be, it still establishes nothing to advance Plaintiff's case. All the affidavit adds to what the Court already

8

knows is that Chu did not intend for Pan and himself to be co-authors of the Snow Globe. That does not alter the Court's analysis of whether Pan could have legitimately copyrighted the sculpture as its sole author.

Third, Plaintiff cites the licensing agreement between Plaintiff and Zhiaoxing stating that Plaintiff is the copyright owner of the Work. (Doc. 73 at 6.) Plaintiff also cites the language of the First Amended Exclusive Licensing Agreement, again stating that Plaintiff is the owner of the Work and has the right to sue. (*Id.*) This does not establish anything, except that Plaintiff purported to license the Work to Zhiaoxing. If Plaintiff had no valid copyright to the sculpture *ab initio*, whatever relationship he has with Zhiaoxing or any other party is null. One cannot license what one does not own. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 432-33 (1984) ("[T]he Copyright Act grants the copyright holder 'exclusive' rights to use and to authorize the use" of their work) (quoting 17 U.S.C. § 106).

Plaintiff relies on *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir. 1980) to support his argument that he, as the one who drew the sketch, is the author of the sculpture. Plaintiff's reliance on *Durham* is misplaced. The *Durham* court held that someone who translated 2D Disney characters into sculpture could not rightly copyright those sculptures. *Durham* at 910. That is unlike the case *sub judice*. Disney characters are already well known and their characteristics preset. Imagine Cinderella in her evening gown, for example–blonde hair in an updo, light blue dress with a bustle, and her signature glass slippers. Taking Disney's drawings and merely translating them into sculpture displayed no creative variation – "nothing recognizably the author's own contribution that sets [her] figures apart from the prototypical Mickey, Donald, and Pluto." *Id.* Here, however, as discussed above, Chu made creative decisions beyond merely translating the picture into the sculpture. Chu fashioned the mold determining the

9

dimensions of the figurine and selected the color scheme, among other creative decisions. Plaintiff supplied Chu sketches and relinquished all creative decisions to Chu thereafter.

The Court finds that Chu exerted enough creative influence to render the sculpture Chu's "own" creation deriving from Plaintiff's sketch. This is because the level of creative influence sufficient to break the chain of authorship from one artist to her successor is minimal to modest. *See ATC Distrib.*, 402 F.3d 700, 712 (6th Cir. 2005) (derivative works are entitled to own copyright protection it demonstrates originality from the underlying work); *Sargent v. Am. Greetings*, 588 F. Supp. 912 ("The test for originality is concededly one with a low threshold in all that is needed . . . is that the author contributed something more than a merely trivial variation, something recognizably his own"; *see also Cannon Grp. v. Better Bags*, 250 F. Supp. 2d 893, 898 (S.D. Ohio 2003) ("Originality requires only a 'minimal degree of creativity.'") (quoting *Feist* at 345)); *see also Durham*, 630 F.2d at 910 ("[T]he test for originality . . . has been aptly characterized as 'modest,' 'minimal,' and as establishing a 'low threshold.'").

Thus, the Court find that Defendants have successfully rebutted the presumption of the validity of Plaintiff's copyright by proving that Plaintiff is not the author of the work. If Plaintiff is not the author of the work, Plaintiff has no valid copyright. If Plaintiff has no valid copyright, Plaintiff has no standing to sue. *Downey v. Downey*, 2010 U.S. Dist. LEXIS 99828 (S.D. Ohio) (if plaintiff is not author, plaintiff has no standing and cannot sue).

### B. Attorneys' Fees

Because the Court finds that Plaintiff has no standing to sue for any of his remaining claims, the Court also **DENIES** Plaintiff's application for statutory damages and attorneys' fees, which are only available to prevailing parties. *See* 17 U.S.C. § 505.

### ORDER

For the foregoing reasons, as to the copyright claim, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 62), **DENIES** Plaintiff's (Docs. 58 and 59), and **DENIES** Docs. 82 and 84 as **MOOT**.  The Court orders the Clerk to enter judgment in favor of Defendants.  This case is **DISMISSED**.

**IT IS SO ORDERED.**

  s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  March 31, 2016**